Index №:  24-cv-        (   ) (   )

# United States District Court
### *for the*
## EASTERN DISTRICT OF NEW YORK

ARMAN NOGHREH AND MOJDEH NOGHREH

**VILLAGE OF KINGS POINT, KOUROS TORKAN,** INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS MAYOR OF VILLAGE OF KINGS POINT, **CHRIS AIOSSA,** INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PART OF THE VILLAGE OF KINGS POINT BUILDING DEPARTMENT, **STEVEN PATAK,** INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PART OF THE VILLAGE OF KINGS POINT BUILDING DEPARTMENT, **TEDI KASHINEJAD** INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, **HOOSHANG NEMATZADEH,** INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, **VILLAGE OF KINGS POINT ARCHITECTURAL REVIEW BOARD**, EACH PERSON IN THEIR OFFICIAL CAPACITIES  ONLY , **SANDY KAMALI** INDIVIDUALLY AND IN HER OFFICAL CAPACITY, **DANIEL KAMALI AND MEGHAN KAMALI**, AND **JOHN AND JANE DOES # 1-10,** INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES

*Defendants*

# VERIFIED COMPLAINT

## DAVID ADHAMI, ESQ.
*Attorney for Noghreh Family*

## CORY MORRIS, ESQ.
863 Islip Avenue
Central Islip, New York 11722
Cory.H.Morris@protonmail.com

# TABLE OF CONTENTS

Verified Complaint ................................................................................. 1

Jury Trial Demanded ........................................................................... 1

Preliminary Statement ......................................................................... 1

Jurisdiction ............................................................................................ 1

Equity Jurisdiction ............................................................................... 2

Venue ...................................................................................................... 3

Facts ....................................................................................................... 3

    The Village of Kings Point, County of Nassau, State of New York ........... 3

    The Village of Kings Point Building Restrictions ....................................... 4

    The Village of Kings Point Architectural Review Committee and Board .. 5

    The Properties Involved in this Case ........................................................ 7

    Successive Violations of Village of Kings Point Code ............................... 8

    Harm/Equitable Relief .............................................................................. 9

    Factual Circumstances Pertaining to Plaintiffs' Claims ........................... 9

    The Malicious Taking of Plaintiff's Propery ............................................ 16

    Notice of Claim and Intent to Sue Filed ................................................. 22

    The Use of a False Survey to Take Plaintiffs' Property ........................... 24

    Corruption and Collusion in the Village of Kings Point ......................... 28

The causes of action ............................................................................ 29

The Civil Rights Act violations ......................................................... 29

    42 U.S.C. §1983: in general ..................................................................... 30

    42 U.S.C. §1983: Unconstitutional "taking" ........................................... 30

    42 U.S.C. §1983: Denial of "due process" .............................................. 31

    Equal Protection Clause Violation .......................................................... 31

    42 U.S.C. §1985: Conspiracy ................................................................... 33

Injuries and damages .......................................................................... 34

Prayer for Relief .................................................................................. 35

Plaintiff's Verification ......................................................................... 38

i

# VERIFIED COMPLAINT

Plaintiffs **ARMAN AND MOJDEH NOGHREH ("PLAINTIFFS")** by and through his attorneys David Adhami, Esq, *of counsel*, and The Law Offices of Cory H. Morris, Cory H. Morris, P.C., as and for their Verified Complaint against the Defendants herein, state and allege as follows:

## JURY TRIAL DEMANDED

1. The Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRELIMINARY STATEMENT

2. Plaintiffs reside at 5 Pond Road, Village of Kings Point, County of Nassau, State of New York, Zip Code № 11024 ("Subject Property") and have so for nearly two decades.

3. This is a civil action seeking Injunctive Relief, Declaratory Judgment and equitable relief together with monetary relief, compensatory damages, punitive damages, and costs and fees for violations of the Plaintiffs' rights under the Equal Protection Clause, the Fifth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution, and the Civil Rights Acts.

## JURISDICTION

4. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 since the action involves a federal question.

5. This action involves unlawful entry, trespass and taking of real property by and through Defendants, individually and collectively, through Sandy Kamali's (a state actor) use of

false land use records to benefit her relatives Defendants Daniel Kamali and Meghan Kamali (collectively "Kamali Family") for building on an otherwise protected parcel located at 238 Kings Point Road, Village of Kings Point, County of Nassau ("238 Kings Point Rd") and thus was a property not able to be developed without the illegal collusion and corruption of the Defendants named herein, individually and collectively, the use of mail and wire to create, enter and utilize false land use records to enter and take the Subject Property from Plaintiffs together with other various damages.

6.    The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 28 U.S.C. §1343.

7.    The Civil Rights Acts—42 U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1986 are an integrated legislative unit manifesting the intent of Congress to create a bundle of rights protected by the United States Constitution of which Plaintiffs are deprived by concerted state action and collusion of each defendant.

## EQUITY JURISDICTION

8.    This Honorable Court is being asked to fashion an appropriate equitable remedy and provide equitable relief for the benefit of the Plaintiffs Arman and Mojdeh Noghreh to wit:

9.     There is no other remedy at law available to plaintiffs  at this point, Plaintiffs have exhausted every remedy within the Village of Kings Point to no avail. Upon successive layers of legal counsel and Plaintiffs filing numerous police reports, complaints with the village building department, and repeated complaints to the village attorney.

10.    Repeated complaints of new founded flooding from Defendants property to the village.


## VENUE

11.    All the events involving the parties to this action occurred in Nassau County, New York.

12.    The Plaintiff resides in Nassau County, New York.

13.    The principal place of operation of the Defendants, individually and/or collectively, jointly and/or severally, is in Nassau County, New York.

14.    Venue is proper in this District under 28 U.S.C. § 1391 because the policies complained of herein and alleged more fully and at large in this complaint operate within the New York Counties located within the jurisdiction of this Court.

## FACTS

### The Village of Kings Point, County of Nassau, State of New York

15.    The Village of Kings Point is a wealthy incorporated village located in the Town of North Hempstead, within Nassau County, New York. It is part of the group of communities collectively known as the Great Neck Peninsula, situated on the North Shore of Long Island.

16.    The Village of Kings Point is known for its affluent residential character, featuring large homes and estates, often with waterfront views overlooking Long Island Sound.

17.    The Village of Kings Point is notable for its strict zoning laws, which help preserve the exclusive residential nature of the village. The community is part of the Great Neck School

3

District, which is highly regarded for its strong academic performance. The area is also known for its significant Persian Jewish community, contributing to the diverse cultural fabric of the region.

18. The Village of Kings Point government operates under a Mayor-Board of Trustees system, providing local governance and administration of municipal services, including its own police force, and regulations which are in addition to those provided by the Town of North Hempstead and Nassau County.

19. The Village of Kings Point states that this level of local governance allows the village to maintain high standards for property upkeep, public safety, and community services.

20. The incorporation of Kings Point as a Village gives it a level of autonomy in managing its local affairs, particularly in zoning and local ordinances, ensuring that the community maintains its distinct and high-standard residential environment.

21. In the Village of Kings Point…specific zoning and local ordinances are strictly enforced to maintain the character and aesthetics of the neighborhood, as well as to protect property values and the environment.

## The Village of Kings Point Building Restrictions

22. All new constructions, modifications, or expansions require a building permit from the Village of Kings Point which includes detailed plans that must comply with both local and state building codes.

23. There are specific limits on how tall buildings can be within the Village of Kings Point. These height restrictions are

designed to preserve sight lines and the general appearance of the community.

24.  Setback regulations dictate the distance a structure must be from property lines, roads, and other structures. The Village of Kings Point states that this is important for maintaining privacy and a uniform appearance throughout the village.

25.  The Village of Kings Point has strict rules about the removal of trees and may require specific landscaping elements to preserve or enhance the community's aesthetic. Permits may be required for removing trees, and there may be requirements to plant new trees if others are removed.

26.  Regulations concerning the grading and excavation of land are critical in areas like the Village of Kings Point to prevent erosion, manage stormwater runoff, and maintain the natural topography. These regulations ensure that changes in land use or land form do not adversely affect neighboring properties or the environment.

27.  Given its location near water bodies like Long Island Sound, Kings Point has stringent environmental protections to prevent pollution and protect the water quality. This includes restrictions on how close constructions can be to the waterfront and measures to protect the marine ecosystem.

## The Village of Kings Point Architectural Review Committee and Board

28.  The Village of Kings Point Architectural Review Committee and Board ("ARC" or "ARB"), named here as Defendant, is empowered to accept, review and grant Applications for the Architectural and Preliminary Site Review Board.

29.    These applications require a Deed; Photographs of the existing main building and accessory buildings on the property; aerial photographs of the site and adjacent surrounding sites.

30.    Defendant Village of Kings Point and the ARC/ARB may require land surveys and, as discussed above, empower and rely upon state actors to utilized land surveys in a fair and appropriate manner so as not to harm the Village of Kings Point, its resident land-owners and the natural environment, whether protected by law or not, for the safety and protection of life and environment within the Village of Kings Point.

31.    A recent survey of the Subject Property showing the quantified gross lot area and lot area with defined exclusions as defined in Village of Kings Point Code Section 161-3; Contoured site topography in the 1988 North American Vertical Datum; FIRM Flood Zones; and all Tidal and Freshwater wetlands confirmed by the NYSDEC; a Site Development Grading and Drainage Plan; a Landscape Plan; Plant photos of all vegetation proposed on the landscape plan; Cut and Fill Plan; Existing Property Cross Sections; Proposed Property Cross Sections; Floor Plans; Roof Plan; Building Sections; Elevations; Renderings; Stake Out Plan; Landscape Lighting Plan; Radius Map and List and Notice to Adjacent Property Owners; along with the required fees.

32.    During all time relevant to this complaint, the Defendant ARC/ARB members included Mark Stumer (as Chairman), Sandy Kamali (named individually as a Defendant), Harvey Gessin, Bita Sassouni, Afshin (Effie) Dilmanian.

33.    ARB/ARC is a Defendant insofar as this Honorable Court may dictate an equitable remedy as it relates to ARB/ARC acceptance of a false land document, a survey, by mail and/or

wire by its member Defendant Sandy Kamali for the benefit of her family and through the influence and corruption of the Defendant Village of Kings Point, Defendant Kouros Torkan, Defendant Chris Aiossa, Defendant Steven Patak, Defendants Tedi Kashinejad and Hooshang Nematzadeh.

## The Properties Involved in this Case

34. Plaintiffs own real property located in the Town of North Hempstead, County of Nassau, State of New York, Section 1, Block 175, Lot 6, together with the parcel of property Section 1, Block 175 and Lot 97 ("Subject Property" better known as 5 Pond Road, Kings Point, New York 11024 ("5 Pond Road").

35. Defendants Daniel Kamali and Meghan Kamali's property situated at 238 Kings Point Road, Kings Point, New York 11024 ("238 Kings Point Rd") is adjacent to 5 Pond Road.

36. In 2006, Plaintiffs purchased the 5 Pond Road property for approximately $4,100,000.

37. In 2022, the Defendants Daniel and Meghan Kamali purchased the 238 Kings Point Property for approximately $1,850,000.

38. A true and accurate copy of a 1994 Survey of both properties is contained within the Village of Kings Point:



39. The 1994 Survey evidences the corruption of Defendants as each Defendant knew and had reason to know of the true property lines of the Kamali Property and Subject Property.

## Successive Violations of Village of Kings Point Code

40.  The Building located at 238 Kings Point Rd. is non conforming in height, setback, sky plane exposure, and square footage

41.  Changing the grade to the detriment of plaintiffs by bringing numerous dump trucks of dirt.

42. Changing  and manipulating the grade to mask the building being over height

43.  Lack of proper setback of the Kamali building being at least 28 feet from the Plaintiffs property line. The Kamali house is 24.8Ft from the Plaintiffs property line.

44.   Selective enforcement occurred here to the detriment of the Plaintiffs and to the benefit of the Defendants (Kamali Family specifically) for which each municipal defendant knew or had reason to know of the selective enforcement in violation of the Equal Protection Clause/Constitutional Rights of the Plaintiffs

## Harm/Equitable Relief

45.   Plaintiffs continue to have serious flooding with any significant rainfall due to Defendants grade manipulation and pitching their property towards Plaintiffs.

46.   Lack of privacy because due to the Defendants house being over height and removal of mature trees by Defendants.

47.   Property is causing damage by not properly containing storm water runoff along with harmful debris

48.   Irreparable harm; due to landslide, mudslide, shifting soil resulting in damage to Plaintiffs retaining wall, drywell, garage, cars, personal property, home and driveway.

49.   The completion of the property is in derogation of the code;

50.   That the completion of the property will continue to degrade plaintiffs property and cause harm:

    a. Flooding;

    b. Unsightliness;

    c. Harm as articulated by the village code, DEC law: unsafe conditions, etc.

## Factual Circumstances Pertaining to Plaintiffs' Claims

51.   Sometime in January 2023, Plaintiff Arman Noghreh was notified by Defendant Kamali's Architect Peter Nesfield about

an Architectural Review Board for the village of Kings Point (ARB) hearing regarding building an addition to the second floor and interior alteration of the 238 Kings Point Road property. The hearing date was February 28, 2023.

52. Plaintiff Arman Noghreh retained Plaintiff's Architect Phil Sutter (whose affidavit is fully incorporated herein) to advise and oversee the application and be present at the hearing in order to protect the privacy of the Subject Property and ensure that 238 Kings Point Rd was being constructed in compliance with state and village building codes.

53. Plaintiff's Architect Phil Sutter and Plaintiff Arman Noghreh attended the hearing at the ARB of the village of Kings Point on February 28, 2023, at approximately seven pm.

54. At the hearing on February 28, 2023, Plaintiff's Architect Phil Sutter argued that the height of the house located at the 238 Kings Point Road property required a variance because the addition was not in compliance with the village code maximum height of thirty-five feet. The plans showed the house located at the 238 Kings Point Road property was forty-one or forty-two feet high and that the ARB should not approve the application. The application was denied due to height and sky plane violations, and the owners were directed by the ARB to apply for variances.

55. Sometime in April 2023, Plaintiff Arman Noghreh was again notified by mail from Defendant Kamali's Architect Peter Nesfield of a new Village of Kings Point ARB hearing for May 8, 2023.

56. Plaintiff's Architect Phil Sutter and Plaintiff Arman Noghreh attended the hearing on May 8, 2023. Defendant Kamali's Architect Peter Nesfield informed the board that the new

design did not require a variance. Plaintiff's Architect Phil Sutter and Plaintiff Arman Noghreh told Defendant ARB chairman Mark Stumer that they would have limited privacy and wanted taller trees to be planted. Chairman Stumer stated that privacy was an important matter.

57. Meanwhile, Plaintiff Arman Noghreh has no privacy because no trees are being planted where his kitchen and bedrooms face the 238 Kings Point Road property and, to make matters worse, Defendant Kamali Family's contractors had removed multiple fifty-foot-high trees from the 238 Kings Point Road property which they had eventually received summonses.

58. Plaintiff's Architect Phil Sutter stated on the ARB record that there could be a violation of height and setback.

59. Plaintiff's Architect Phil Sutter later confirmed, through affidavit testimony, that Defendants engaged in a height and setback violation for Defendants Daniel and Meghan Kamali.

60. On July 19, 2023, Plaintiff Arman Noghreh received a text message from Plaintiff's Architect Phil Sutter stating that Defendant Chris Aiossa, individually and in his official capacity as part of the Village of Kings Point Building Department, had received the building plans but had not reviewed them yet but that he would let Plaintiff's Architect Phil Sutter look at them as well.

61. Sometime in January 2024, Defendant Chris Aiossa, individually and in his official capacity as part of the Village of Kings Point Building Department, informed Plaintiff's Architect Phil Sutter that there was a hearing scheduled for January 16, 2024, to discuss changes to an existing addition in the village.

62.  However, this was not relayed to Plaintiff Arman Noghreh because supposedly it was a minor change and did not require a public hearing, which Plaintiff Arman Noghreh found unacceptable because any changes to the plans already approved would affect him. Plaintiff's Architect Phil Sutter and Plaintiff Arman Noghreh attended the hearing on January 16, 2024, and strangely there was no mention of this application.

63.  When the session ended, Plaintiff's Architect Phil Sutter got up and asked why this matter was not discussed and why they were not officially informed. Defendant Steve Limmer, the Village of Kings Point attorney, responded that since this was a slight change to the neighbor's plans, a public forum was not required and if they had any issues or concerns to write a letter with their concerns and deliver them to Defendant Chris Aiossa, Kings Point Village Inspector.

64.  A letter was sent to Defendant Chris Aiossa regarding their concerns.

65.  Plaintiff Arman Noghreh (as detailed in his affidavit, annexed hereto) came to see multiple emails from November 2023 between Defendant Kamali's Architect Peter Nesfield and Defendant Chris Aiossa, Kings Point Village building inspector, whereby Defendant Chris Aiossa informs Defendant Kamali's Architect Peter Nesfield that the changes mentioned in the email did in fact require an ARB hearing and Defendant Chris Aiossa suggested Defendant Kamali's Architect Peter Nesfield to file for an ARB waiver. However, that is illegal and a full ARB hearing had to be held.

66.  On January 18, 2024, the attached letter with their concerns was sent to Defendant Chris Aiossa regarding the new

addition planned by Defendant Daniel Kamali, owner of the 238 Kings Point Road property.

67. Plaintiff's Architect Phil Sutter was informed by Defendant Chris Aiossa subsequently that most of their requests were granted and that the addition was going to be rebuilt and pushed away from the Subject Property to the legal setback of twenty-eight feet from their property line. This was again done without a public hearing therefore illegal in Plaintiff Arman Noghreh's opinion.

68. Plaintiff Arman Noghreh has come to learn that several of these meetings were held without notifying him and there were major changes to the plan of the 238 Kings Point Road property all without a public ARB hearing.

69. On March 24, 2024, there was a minor flood from the neighbor's property into theirs (the neighbor's property sits about eight or nine feet higher than theirs). Under the prior owners of the 238 Kings Point Road property, the property was about eight or nine feet higher in elevation than Subject Property but the grading of the property was level and there were significant old large trees with vast root structures.

70. When the new owners of the 238 Kings Point Road property, Defendants Daniel Kamali and Meghan Kamali, started construction they changed the pitch of the land so that it would slope towards the 5 Pond Road property and they cut down two large Pine trees (over forty feet tall) that would soak up a significant amount of groundwater and prevent erosion. Plaintiff Arman Noghreh emailed Plaintiff's Architect Phil Sutter and Defendant Chris Aiossa, Kings Point Village building inspector, pictures of the flooding and mud runoff from the neighbor's property clogging his drywell by his garage.

71. On March 25, 2024, Defendant Daniel Kamali and his contractors were issued four summonses for water erosion and illegal removal of trees with a hearing date of May 1, 2024, by Defendant Chris Aiossa, Kings Point Village building inspector.

72. Plaintiff Arman Noghreh attended the court hearing on June 5, 2024 (It was adjourned from May 1, 2024, to June 5, 2024). Defendant Daniel Kamali, owner of the 238 Kings Point Road property, was fined eight thousand dollars for the removal of two large pine trees. The other charges were dropped.

73. Plaintiff Arman Noghreh asked the village prosecutor, Michelle Pryor, why the main summons for erosion was not prosecuted, and she told him that as part of the settlement, the other summonses were dismissed.

74. After the June 5, 2024, hearing finished, Plaintiff Arman Noghreh told the neighbor's attorney that his drywell was filled up with sand and mud from her client's property and if her client, Defendant Daniel Kamali, did not fix the issue, Plaintiff Arman Noghreh would have no choice but to sue them.

75. Plaintiff Arman Noghreh was subsequently contacted by his neighbor's landscaper, Michael Mainland, about having a meeting to resolve the issues regarding the erosion and removing the sand from his dry well that was deposited by stormwater runoff from the 238 Kings Point Road property.

76. On June 4, 2024, Plaintiff Arman Noghreh emailed Defendant Chris Aiossa, Kings Point Village inspector, stating that he gets water in his backyard every time it rains from the neighbor's property at the 238 Kings Point Road property. On June 5, 2024, Plaintiff Arman Noghreh received

14

an email from Defendant Chris Aiossa, Village of Kings Point building inspector, admitting that "the builder has not done a good job of managing the site until now.

77. Plaintiff Arman Noghreh expected that to change when Mike (Michael Mainland of Steven Dubner Landscaping) is involved." Please also see the email dated March 26, 2024, which Plaintiff Arman Noghreh recovered through a records request from Mike Mainland of Steven Dubner Landscaping to Defendant Chris Aiossa stating that the erosion control in place is not adequate and that he can resolve this issue.

78. On June 11, 2024, Plaintiff Arman Noghreh met Mike Mainland from Steven Dubner Landscaping who is the landscaper of the 238 Kings Point Road property. He informed Plaintiff Arman Noghreh that the neighbor's General Contractor had a poor water erosion plan and that he would correct the issue so that they would not experience any more water runoffs.

79. Mike Mainland also said that he would replace Plaintiff Arman Noghreh's damaged retaining wood wall caused by the shifting of soil on the neighbor's property at the 238 Kings Point Road property and that he would install a new stone retaining wall for the 5 Pond Road property and that new trees were going to be installed on the property line.

80. On June 15, 2024, Plaintiff Arman Noghreh suffered another significant water runoff from his neighbor's property. Plaintiff Arman Noghreh sent pictures via text to Mike Mainland of Steven Dubner Landscaping.

81. On June 20, 2024, Plaintiff Arman Noghreh came home to find surveyors' sticks three and a half deep in his property.

82. The Subject Property was unlawfully entered and a trespass committed upon the same.

83. On June 20, 2024, Plaintiff Arman Noghreh called Mike Mainland of Steven Dubner Landscaping and was told by him that the sticks are the boundary line of their properties. Plaintiff Arman Noghreh told him the sticks were incorrectly placed and the property line is about three and a half feet in his neighbor's property behind an existing black metal fence. Essentially, the surveyor of the 238 Kings Point Road property had erroneously placed the boundary line three and a half feet deep inside Plaintiff Arman Noghreh's property.

84. Upon realizing that the owner of the 238 Kings Point Road property was intending to take four feet of his property on June 21, 2024, Plaintiff Arman Noghreh retained Adam Koblenz Esq. to deal with the property line issue. Adam Koblenz sent a cease and desist letter on June 21, 2024, to the Kamalis, their architect, their surveyor Neil Grange, and their landscape architect Steven Dubner Landscaping informing them that no work must be done on the property line. Adam Koblenz also stated that it would be best if the representative or attorney of the 238 Kings Point Road property would contact him immediately to discuss the property line issue.

## The Malicious Taking of Plaintiff's Propery

85. On June 26, 2024, Plaintiff Arman Noghreh's father passed away. The funeral was scheduled for June 27, 2024.

86. On June 27, 2024, Plaintiff Arman Noghreh and his family returned home from the cemetery and found Steven Dubner Landscaping workers in the process of removing trees on the property line. By the time they got there, most of their mature

16

trees and bamboo plants had been cut, their metal fence had been removed, and retaining wall further damaged.

87.  Upon witnessing this atrocity, Plaintiff Mojdeh Noghreh broke down and started hysterically sobbing. It was painful for Plaintiff Arman Noghreh to see her sob like that but even more painful to see the workers of Steven Dubner Landscaping laughing at Plaintiffs and not stopping their demolition of the trees on the property line.

88.  Plaintiff Mojdeh Noghreh rushed to the Kings Point Police Department as their house phones were not working since Steven Dubner Landscaping workers had intentionally or unintentionally cut the internet cable servicing their home cameras and phone line.

89.  On June 27, 2024, the police arrived and asked Steven Dubner Landscaping workers to stop their demolition work. The policemen called Defendant Chris Aiossa, who arrived shortly and witnessed the destruction. He immediately placed a work stop order on the property line and the new addition.

90.  The contractor for Defendant Daniel Kamali, Levid Hakimian, was specifically informed not to do any work on the property line or the addition because the addition could technically be in the wrong setback.

91.  A few days later, Plaintiff Arman Noghreh twice caught the contractors for Defendant Daniel Kamali continuing to work on the neighbor's addition which had the work stop order. Plaintiff Arman Noghreh contacted Defendant Chris Aiossa by email on June 28, 2024, and sent him pictures of workers working on the addition. Which resulted in  a full work stop order issued by the Village of Kings Point Building Department.

92. On July 23, 2024, at around 5:30 PM, Plaintiff Arman Noghreh was informed that there was a Kings Point village trustee board meeting scheduled for 6 PM that day, and that they were going to discuss the removal of the work stop order prematurely.

93. Plaintiff Arman Noghreh reached out to his friend and attorney Ira Nesenoff, who is a trustee, by text and voiced his concern and questioned why he was not informed of such a meeting. Ira Nesenoff texted that he should come down to the village hall immediately and be heard. Plaintiff Arman Noghreh rushed to the village hall, and Ira Nesenoff recused himself since he is Plaintiff Arman Noghreh's real estate attorney and there would be a conflict of interest.

94. At the hearing, Defendant Kouros Torkan, individually and in his official capacity as Mayor of Village of Kings Point, spoke and said that the village did not want to hold up the neighbor's project and that the second work stop order was placed in error, and the Board of Trustees were recommending that the work stop order in place would be lifted, and the work could resume, and the property line dispute was a civil matter.

95. It became clear that Defendants, individually and collectively, engaged in an unlawful enterprise to enrich persons, such as state-actor Defendant Sandy Kamali, and her family, to the detriment of other property owners within Village of Kings Point.

96. Plaintiff Arman Noghreh objected to the early removal of the work stop order, which had a hearing date of August 8, 2024 as further detailed in his affidavit.

97. Plaintiff Arman Noghreh informed the mayor and the board of trustees that the survey of his neighbor, prepared by Neil Grange, was defective, and there was even an email from the surveyor Neil Grange to Defendant Chris Aiossa and others, which stated that he had made a mistake when preparing the survey and that he had to redo the survey. Plaintiff Arman Noghreh even mentioned this email to the mayor and board of trustees. Defendant Kouros Torkan responded that the surveyor Neil Grange had later redacted his statement whereby he had acknowledged an error and that since Plaintiff Arman Noghreh did not have an updated survey of his property, the Village of Kings Point would rely on Neil Grange's survey.

98. Defendants actions were done in furtherance of the criminal enterprise whereby Defendant Kouros Torkan knew and had reason to know that a false land record was purchased by a Village of Kings Point Defendant and utilized for the purpose of taking private property when a land record, the above 1994 survey of both properties, was not and could not seriously be in dispute as a verifiably true and accurate land record.

99. Plaintiff Arman Noghreh brought to the attention of the board of trustees and the mayor that he had several surveys dating back to 2006 showing his house was close to twenty-nine feet from the property line and that his land could not shrink, therefore the survey of Neil Grange was faulty. Defendant Kouros Torkan responded that since Plaintiff Arman Noghreh's survey was older, the Village would only accept the latest survey from Neil Grange.

100. Plaintiff Arman Noghreh found the statements from the mayor and the other two trustees, Nematzadeh and Kashinejaad, to be completely unreasonable and objected to

the same. Finally, the mayor suggested to Defendant Daniel Kamali, not to work any further on the property line and try to resolve this issue amicably. At the end of the hearing, Defendant Daniel Kamali came and spoke to Plaintiff Arman Noghreh and said he would like to meet with him and discuss a friendly solution to the issue of the property line.

101. On August 2, 2024, Plaintiff Arman Noghreh retained Alphonse Pesce Land Surveyor to prepare a new survey showing the property line. The work was done on August 2, 2024, and they were told to await results.

102. On August 6, 2024, Plaintiff Arman Noghreh suffered yet another water runoff from his neighbor's property; however, this time it was rather massive and akin to a mudslide. This was partially caused by a heap of soil brought to the property by Mike Mainland of Steven Dubner Landscaping and not properly covered.

103. There was so much water and mud flowing into his property that it completely filled up the dry well near his garage and all the water and mud went into his garage and backyard area flowing towards his pool and the pond facing his home. Plaintiff Arman Noghreh had to stay home that night to try to get all the water out of the garage so that his collectible cars wouldn't get damaged.

104. Plaintiff Arman Noghreh sent the pictures and videos of the flooding and mudslide to two of the Defendant Village of Kings Point Village Trustees, Mr. Nesenoff and Mr. Victory. In addition, he called and texted Defendant Daniel Kamali, the owner of the 238 Kings Point Road property, informing him of this massive issue and destruction to Subject Property.

105. Defendant Daniel Kamali asked his contractor, Levid Hakimian, to do something, and two workers were sent and installed a pump inside his drain to empty the water. This flooding and mudslide was the result of premature lifting of the work stop order by the Board of Trustees without making sure there was a proper erosion control plan in place.

106. As detailed in his affidavit, Plaintiff Arman Noghreh found an email from Defendant Chris Aiossa to Michael Mainland stating that it is a law to cover all the dirt that was brought to the property by a tarp and hold it down with stones or sandbags, yet no violations were issued for this violation.

107. On August 7, 2024, the pictures and videos from the flooding and mudslide were sent to Defendant Chris Aiossa. Shockingly, no violations or summonses were issued by the Village of Kings Point, whereas Plaintiff Arman Noghreh had heard of large fines being handed out to others whenever a small amount of water would come out of their construction site. Plaintiff Arman Noghreh was even more surprised since Defendant Chris Aiossa had previously issued multiple summonses back in March 2024 for water runoff much less than what he experienced on August 6, 2024.

108. On August 8, 2024, as per his neighbor's request, Plaintiff Arman Noghreh met with the neighbor and representative of Steven Dubner Landscaping, Mike Mainland, and Plaintiff's Architect Phil Sutter was also present trying to find a resolution.

109. Unfortunately, Mike Mainland was very offensive and rude to Plaintiff Mojdeh Noghreh and Plaintiff Arman Noghreh, blaming them for the mud slides. He also stated that a few days later he was planning to enter their property and plant his new trees on their property.

110. In that meeting, Plaintiff Arman Noghreh told Michael Mainland not to plant anything on their property and to please give him time to get his new updated survey showing where the actual property line was since their survey was incorrect and Neil Grange had admitted in writing that his survey was incorrect.

## Notice of Claim and Intent to Sue Filed

111. On August 9, 2024, Plaintiff Arman Noghreh's attorney, Adam Koblenz, emailed a "Notice of Claim & Intent to Sue" to the owner of the 238 Kings Point Road property, Defendant Daniel Kamali, and his landscaper Steven Dubner Landscaping. In that notice, Adam requested Defendant Kamali and Mainland to contact him on or before August 12, 2024, to possibly find a resolution to their issues; however, neither Defendant Kamali nor his landscaper Mike Mainland contacted Adam.

112. On August 9, 2024, Plaintiff Arman Noghreh received the new survey prepared by Alphonse Pesce Land Surveyor. The results of this recent survey showed the closest part of his home to be twenty-eight point seven feet from the property line. The results were very similar to his previous surveys.

113. On August 13, 2024, Mike Mainland of Steven Dubner Landscaping brought trees and started planting them in the ground. However, it was very interesting that he planted the new trees four feet away from their surveyor Neil Grange's sticks towards the 238 Kings Point Road property and away from the 5 Pond Road property, which is the correct property line based on Plaintiff Arman Noghreh's several surveys.

114. Plaintiff Arman Noghreh believes that Michael Mainland had realized at that point that their latest survey by Neil Grange

was, in fact, incorrect, and Mainland did not want to plant the new trees on Plaintiff Arman Noghreh's property knowing full well that he was in the process of getting an updated survey proving Neil Grange's survey wrong.

115. Please see the attached email from Mike Mainland's office to Defendant Chris Aiossa and Steven Patak, Village of Kings Point building inspectors, requesting them to observe the trees that were just planted along the property line. On that day, Mike Mainland was very unprofessional and rude towards Plaintiff Mojdeh Noghreh.

116. On August 18, 2024, while out of the country, Plaintiff Arman Noghreh suffered yet another mudslide and more flooding in his garage. Plaintiff Arman Noghreh's relative came to his home and found water and mud in the garage.

117. Plaintiff Arman Noghreh sent the pictures of the damage to his attorney Adam Koblenz who forwarded the same on August 19, 2024, to the Village of Kings Point attorney, Steve Limmer, and the Village of Kings Point building inspector, Defendant Chris Aiossa, on the same day. However, not surprisingly, there was no response from either to Adam's email. Also, not surprisingly, no violations or summonses were issued by the Village of Kings Point building inspector.

118. On August 19, 2024, attorney Adam Koblenz emailed a copy of the new 2024 survey and the previous survey from 2012 to the Village of Kings Point attorney, Steve Limmer, and building inspector, Defendant Chris Aiossa, in hopes of proving to them that the two surveys matched and that their survey was accurate and the survey provided by Neil Grange, who was the surveyor for the 238 Kings Point Road property, was incorrect.

119. Not surprisingly, the only response was from Defendant Chris Aiossa confirming the receipt and requesting a signed and stamped original of the 2024 survey.

120. Plaintiff Arman Noghreh decided to check the accuracy of the new addition constructed at the 238 Kings Point Road property and requested his new surveyor, Alphonse Pesce Land Surveyor, to calculate the setback on the neighbor's new addition and include it on the new survey.

121. The results showed a setback of twenty-four point eight feet for the new addition. The village code requires a minimum of twenty-eight feet, which means that the new addition at the 238 Kings Point Road property is not code compliant.

122. Plaintiff Mojdeh Noghreh took the updated survey depicting the setback of the new addition of the 238 Kings Point Road property and showed it to Village of Kings Point building inspector, Defendant Chris Aiossa, in person on September 5, 2024, at which time she called Plaintiff Arman Noghreh from Chris's office and let him have a conversation with him regarding the new addition at the 238 Kings Point Road property.

123. Plaintiff Arman Noghreh informed Defendant Chris Aiossa of the illegal setback depicted on his survey. Defendant Chris Aiossa then stated that he had been ordered by counsel not to get involved because this is a civil matter.

## The Use of a False Survey to Take Plaintiffs' Property

124. Plaintiff Arman Noghreh was shocked to hear that because Defendant Chris Aiossa had requested a new survey and now that he had it in his hands, he was claiming that this is a civil matter. Both Plaintiff Arman Noghreh and Plaintiff Mojdeh Noghreh felt extremely violated at this point. Why would the

Village inspector ask for a new survey and then state that it was useless to him?

125. Plaintiff Arman Noghreh has reviewed the Zillow report for the 238 Kings Point Road property, Kings Point. This report indicates that the house was previously purchased on February 26, 2004, by Fred Asher for two million three hundred ten thousand dollars.

126. Fred Asher then listed this house for sale on December 2, 2016, for two million seven hundred fifty thousand dollars. The house was eventually sold to Defendant Daniel Kamali for one million eight hundred fifty thousand dollars on December 22, 2022, in the hottest housing market. The reason this house sat in the market unsold for such a long time and eventually sold for less than what it was purchased was that the property was irregular and that it was very difficult to build a new house on it. The property was sold at a significant loss after 18 years.

127. Plaintiff Arman Noghreh has reviewed some of the Freedom of Information Law documents received as detailed in his affidavit for which, among them are multiple emails between Sandy Kamali, who is Defendant Daniel Kamali's mother and also a member of the ARB board, and Defendant Chris Aiossa, Kings Point Village Inspector, Steve Limmer, who is the attorney for the Village of Kings Point, and Defendant Kouros Torkan, the mayor of Village of Kings Point, through his personal email address and not the email address provided to him by the Village of Kings Point.

128. Plaintiffs swear, under oath, as to the criminal enterprise and collusion between state actors within Village of Kings Point who, using mail and wire, enrich state actors (e.g. Sandy Kamali) to the detriment of private citizens (Plaintiffs) thus

enriching themselves through the use of legal process and subterfuge based on false land records knowing and having reason to know that such land records (Sandy Kamali's survey) was demonstrably false and took private property from Plaintiffs and thus violated setback requirements.

129. Plaintiff Arman Noghreh submits it is highly unethical that an ARB member who recused herself from both ARB hearings concerning the 238 Kings Point Road property was actively contacting the above officials multiple times before and after the ARB hearings.

130. In addition, Plaintiff Arman Noghreh has learned that there have been several meetings held between Defendant Chris Aiossa, Kings Point Village Inspector, and Paul Bloom, who is Defendant Daniel Kamali's attorney, regarding the 238 Kings Point Road property for which it is now known that a false land record was submitted by mail and wire to take Plaintiffs' property and cause, among other things, environmental destruction to the Subject Property and surrounding area.

131. In the interim, Defendants, individually and collectively, knew and had reason to know that the survey submitted by Sandy Kamali by mail/wire was a false survey, noting property lines drastically different than that on file from the previous owner of *both* parcels, the Kamali Property and the Subject Property before Plaintiffs purchased their Subject Property and the Kamali Family engaged in collusion to offer the false land document to enter and take Plaintiffs' property.

132. Plaintiff Arman Noghreh has also been privy to emails between Defendant Chris Aiossa, Kings Point Village Inspector, and Defendant Daniel Kamali's contractors agreeing to changes that, in fact, need to be first approved by

the ARB board and finds these highly suspicious and unethical.

133. One such email is from Kings Point Village Inspector Chris Aiossa to Defendant Daniel Kamali, owner of the 238 Kings Point Road property, and his landscape contractor, Mike Mainland of Steven Dubner Landscaping, Levid Hakimian, the general contractor, and Paul Bloom, the attorney for Defendant Daniel Kamali, authorizing the contractors not to install a fence and resubmit their landscaping plans, which will be approved by the Kings Point Village Building Department yet again without an ARB hearing.

134. In addition, the contractors for the 238 Kings Point Road property have been working on holidays and off-hours nonstop. Plaintiff Mojdeh Noghreh has called the Kings Point Village Police Department many times since the construction started for the 238 Kings Point Road property back in August 2023.

135. After review of the Freedom of Information Law documents produced, Plaintiff Arman Noghreh has found an email dated February 15, 2024, from Kings Point Village Building Inspector Chris Aiossa to Village of Kings Point ARB chairman Mark Stumer regarding ARB waivers submitted by Defendant Kamali's Architect Peter Nesfield as revised from the meeting between Mark Stumer, Peter Nesfield, and Sandy Kamali, Defendant Daniel Kamali's mother, and an ARB member.

136. Clearly magnifying the fact that even though Sandy Kamali had recused herself from the two official ARB hearings, she was very much involved with the construction project at the 238 Kings Point Road property before and after the two ARB official hearings, and this was well known to both Mark

Stumer, the chairman of the ARB Board, and Defendant Chris Aiossa, Kings Point Village Building Inspector.

137. The contractors for the 238 Kings Point Road property have engaged in illegal grade alteration of the 238 Kings Point Road property. In fact, they have pictures showing soil brought to the property on September 18, 2024.

138. The engineer for the 238 Kings Point Road property, Northcoast Civil's drainage & grading plan dated September 5, 2023, states that six hundred cubic yards of fill are to be cut and only fifty cubic yards of fill are to be removed, so it is suspicious as to why the contractors for the 238 Kings Point Road property are still bringing additional soil to the property. Furthermore, please see attached pictures of a retaining wall taken on September 17, 2024, and then the next day on September 18, 2024, showing how much dirt was added and how much the grade was changed by the contractors of the 238 Kings Point Road property.

139. The neighbor's landscape contractor, Steven Dubner Landscaping, is bringing additional dirt to Defendant Daniel Kamali's property at the 238 Kings Point Road property daily. Please see attached pictures of additional grade manipulation by Steven Dubner Landscaping taking place on September 24, 2024.

## Corruption and Collusion in the Village of Kings Point

140. These actions and the ongoing issues surrounding the enforcement of codes and regulations by the Village of Kings Point have created a complex and challenging situation for Plaintiff Arman Noghreh and Plaintiff Mojdeh Noghreh, significantly impacting their quality of life and the enjoyment of their property at 5 Pond Road.

141. The couple has faced continuous disruption, privacy invasion, and potential property damage due to what they perceive as negligent oversight and possible unethical behavior by certain village officials and the conflicting interests involved in the management of the 238 Kings Point Road property's redevelopment.

142. Plaintiff Arman Noghreh seeks resolution through legal means to address these grievances, ensuring that all parties involved adhere to the legal standards and regulations meant to protect residents and maintain the integrity of the community.

143. The ongoing situation highlights the need for transparent and accountable actions by all stakeholders, including municipal officials and private entities involved in property development and management in the Village of Kings Point.

## THE CAUSES OF ACTION

144. To the extent necessary to support each of the causes of action hereinafter set forth and allege, Plaintiffs repeat, reiterate and reallege the appropriate foregoing paragraphs of this complaint commencing with the Section designated "Facts," ¶¶ 15 and concluding with the final paragraph ¶ 145.

## THE CIVIL RIGHTS ACT VIOLATIONS

145. The following Defendants, **VILLAGE OF KINGS POINT, KOUROS TORKAN, CHRIS AIOSSA, STEVEN PATAK, TEDI KASHINEJAD, HOOSHANG NEMATZADEH, VILLAGE OF KINGS POINT ARCHITECTURAL REVIEW BOARD, AND SANDY KAMALI** (HEREINAFTER "KINGS POINT DEFENDANTS") individually and/or collectively, jointly and/or severally, are "state actors" responsible for conspiring with the Kamali Family to deprive the Plaintiffs of federally protected constitutional rights.

146. Kings Point Defendants knew and had reason to know that a false survey was distributed by mail and/or wire to enter, take and trespass upon Plaintiffs' Subject Property and benefit Defendant State Actor Sandy Kamali's family, named Defendants Daniel Kamali and Mehan Kamali.

147.  Defendants used the false Neil Grange survey and transmitted it in a coordinated effort through mail, wire, email, in order to defraud the  public and unjustly enrich themselves.

## 42 U.S.C. §1983: in general

148. Title 42 U.S.C. § 1983 provides that "every person who, under color of [state law] subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and laws, shall be liable to the party injured."

149. The various Kings Point Defendants were acting as state actors in accepting land use documents for Village of Kings Point.

150. The various Kings Point Defendants, individually and collectively, knew and had reason to know that land use records existed for the Kamali Property and Subject Property.

151. The various Kings Point Defendants did place the onus on the Plaintiffs opposed to Sandy Kamali and Defendants, individually and collectively,  to disprove the false survey purchased by Sandy Kamali and offered to enter, trespass, destroy and take Plaintiffs' Property.

## 42 U.S.C. §1983: Unconstitutional "taking"

152. Plaintiffs repeat and realleged the above paragraphs as if fully stated herein:

153.

154.  The survey prepared by Neil Grange for the Kamali Defendants was erroneous and false even by Mr. Granges own admission in his emails to Aiossa  and others, only to recant in a subsequent email as if he was ordered to do so.

155. It is not possible the Neil Grange survey to be off by multiple feet when at least three other independent surveyors measured the same exact properties and their measurements came within inches of each other.

156. In the world of surveys any discrepancy of more than 6 inches is highly unlikely and almost unheard of.

157. The resultant taking of property cause

## 42 U.S.C. §1983: Denial of "due process"

158. Defendants never provided Plaintiffs with any meaningful notice and a pre-deprivation hearing before threatening to take their property or right to due process to be heard at an open meeting as prescribed by the open meetings law.

159. Defendants, individually and/or collectively, jointly and/or severally, intended to and did cause injury and damage to the Plaintiffs.

## Equal Protection Clause Violation

160. Defendants individually collectively discriminated against Plaintiffs in violation of the Equal Protection Clause:

161. Plaintiffs were treated differently than Daniel Kamali and Meghan Kamali.

162. Defendants, individually and collectively, did not enforce Village of Kings Point, State and Federal law against Daniel

Kamali and Meghan Kamali while strenuously enforcing such law against other residents.

163. Plaintiffs were treated differently than Daniel Kamali and Meghan Kamali insofar as the Village of Kings Point law was used only to injure Plaintiffs and benefit Daniel Kamali and Meghan Kamali due to Defendant Sandy Kamali.

164. Defendants treatment of Plaintiffs was malicious, to injure and take the Subject Property, evidenced by unlawful entry, trespass and violating the sanctity and Quiet Enjoyment of the Subject Property during high-holy religious observation of mourning (father's loss), the Jewish New Year (Rosh Hashanah) and the Jewish Atonement (Yom Kippur).

165. Plaintiffs were intentionally treated differently from others similarly situated within the Defendants Village of Kings Point in the following manner:

   a. Plaintiffs were required to produce a survey to reinstate a stop-worker order that would normally remain until the Defendants, the persons doing the construction in violation of the law, would satisfy their burden of showing their actions were justified under the law;

   b. Defendants, individually and collectively, refused to enforce the law in favor of Plaintiffs;

   c. Defendants, individually and collectively, refused to enforce the status-quo, a stop-work order, due to Defendant Sandy Kamali's influence if not interest in 238 Kings Point Road;

   d. Defendants refused to enforce its noise ordinances when Plaintiffs would show evidence of said violation;

e. Defendants refused to enforce setback, grade and other property violations when Plaintiffs would present evidence of said violation; and

f.  Defendants, individually and collectively, knew and had reason to know that Plaintiffs property was damaged and yet Defendants did not pursue prosecution against the perpetrators of Village of Kings Point violations as desired by Plaintiffs if not as vigorously as Defendants would against other violators.

166. There is and remains no rational basis for mistreatment and lack of enforcement of the state, federal and/or Village of Kings Point law by the Defendants, individually and or collectively, if not to benefit Defendant Sandy Kamali or her family, Defendants Daniel Kamali and Meghan Kamali.

167. While Defendant Sandy Kamali or her family, Defendants Daniel Kamali and Meghan Kamali, should be treated similarly if not the same as Plaintiffs, adjoining property owners, the Kamali Family Defendants have received more favorable treatment than Plaintiffs by Village of Kings Point Defendants individually and collectively.

## 42 U.S.C. §1985: Conspiracy

168. Defendants, individually and/or collectively, jointly and/or severally, conspired to deprive Plaintiffs of their human rights and constitutional rights as discussed above.

169. Defendant Sandy Kamali for and by her family, Defendants Daniel Kamali and Meghan Kamali, did join with other state actors to violate Plaintiffs' statutory and civil rights in their Quiet Enjoyment of Property, Sepulcher, Religious Observances and other sacred activities enjoyed by

homeowners and other similarly situated persons within the Village of Kings Point without the collusion stated herein:

170. Upon information and belief, the overt meeting of the minds between and among the Defendants, individually and/or collectively, jointly and/or severally, as evidenced by meetings, correspondence and electronic communications including various communications show the influence of Defendant Sandy Kamali or her family, Defendants Daniel Kamali and Meghan Kamali, to allow the unlawful expansion of 238 Kings Point Road to the detriment of Plaintiffs.

171. Such conspiracy is further evidenced by the use of a false land record, the survey in the favor of Defendant Sandy Kamali, to enter, trespass take and violate Plaintiff's Property and Due Process rights through state action, Kings Point Defendants through the Defendants ARC/ARB action(s) or omission(s).

## INJURIES AND DAMAGES

172. "Conscience is the most sacred of all property."

173. Plaintiffs Quiet Enjoyment of Property free from unlawful infringement, trespass and taking occurs and continues to occur without immediate intervention from this Honorable Court.

174. Further development represents an imminent danger of serious, permanent, and irreparable damage to the public health and safety of the residents of the Village of Kings Point, presents potential environmental concerns along with the entry and taking of Plaintiffs' property.

175. Should Defendants, individually and collectively, not be enjoined from such action, Plaintiffs will suffer an unlawful taking by state actors in violation of their constitutional rights together with continued infringement of their ability to

peaceably live and enjoy their own residence and protected environmental lands free from Defendants unlawful destruction of the same.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Arman and Mojdeh Noghreh residents of the Village of Kings Point and Nassau County so unfortunate as to suffer economic loss, harm, and damage as a result of actions by the Defendants individually and collectively jointly and severally seek judgment:

AWARDING Plaintiff damages in an amount to be determined at a jury trial for past and continued violation of his constitutional rights, restriction of use and enjoyment of Property;

DECLARING that Village of Kings Point Defendants did engage in collusion and conspiracy to take portions of the Subject Property;

DECLARING that Defendants did engage in selective enforcement and prosecution violating the Equal Protection Clause;

DECLARING Defendant Building Inspector Chris Aiossa did fail to ticket, prosecute and enforce Defendant Village of Kings Point building code equally among the citizens of Kings Point to the benefit of the Kamali Family;

DECLARING that the value of Plaintiffs Property is diminished by Defendants' acts and said value is a compensable taking;

DECLARING that the previous designation of 238 Kings Point Road was appropriate for the safety and wellbeing of Village of Kings Point citizens and others similarly situated, including but not limited to the Plaintiffs.

DECLARING that Defendants unlawful and illegal access to building of lands otherwise environmentally protected that were not intended to be developed harm Plaintiffs and Village of Kings Point relatives so unfortunate to be similarly situated.

DECLARING that the actions of Defendants, individually and collectively, utilized mail and wire to use a false survey proffered by Defendant Sandy Kamali as a subterfuge to entry and take Plaintiffs' private property.

IMPOSING a constructive trust or resulting trust of Defendants, individually and collectively, for environmental damages caused to date and for continuing damages to be more fully determined by the trier of fact in this proceeding;

PROHIBITING Defendant Village of Kings Point from discriminatory enforcement, selective prosecution, and willful failure to enforce the Defendant Village of Kings Point Village Code against the Kamali Family and to the detriment of Plaintiffs and other Village of Kings Point citizens so unfortunate to be similarly situated;

PROHIBITING AND ENJOINING Kamily family from further development of the property in derogation of Plaintiffs' Rights and the Village of Kings Point Building code together with other applicable state and federal laws, rules and regulations;

DIRECTING Defendant Kings Point to engage in ameliorating the discriminatory practices and selective enforcement of its Village of Kings Point Building Codes, Rules and Regulations;

All together with such other and further relief as this Honorable Court shall deem just, proper and equitable under the

36

circumstances including the costs and reasonable attorneys' fees of counsel representing the Plaintiffs.


DATED AT: Great Neck, NY
            October 14, 2024


                                        /s/  David Adhami /s/
                              _____
                                        David A. Adhami, Esq.
                                        *Attorneys for the Plaintiffs*


                                        Cory H. Morris, Esq.
                                        Cory.H.Morris@protonmail.com


37

## PLAINTIFF'S VERIFICATION

State of New York
County of Nassau    } *ss*:

Plaintiffs ARMAN NOGHREH AND MOJDEH NOGHREH also known as
Noghreh Family, being duly sworn, deposes and says that I am the
Plaintiff in this Verified Complaint and that I have read the foregoing
Complaint, know the contents thereof, and that the same are true to my
own knowledge and belief.

_____
ARMAN NOGHREH

_____
MOJDEH NOGHREH

38